[Civ. No. 724. Fourth Appellate District.—February 29, 1932.]

D. B. ROSE, INC. (a Corporation), Appellant, v. HODGE TRANSPORTATION SYSTEM (a Corporation) et al., Defendants; F. M. HODGE, Respondent.

Morin, Newell & Brown and J. W. Morin for Appellant.

Randall & Bartlett for Respondent.

LAMBERT, J., *pro tem.*—This action was brought by appellant D. . B. Rose, Inc., a corporation, as assignee of Canavan Motors Corporation, against Hodge Transportation System, a corporation and a creditors' committee (not necessary to name). F. M. Hodge was made a defendant also, and a large number of creditors of the Hodge Transportation System, a corporation, were also made defendants. The amended and supplemental complaint was in five counts, each one practically identical.

It was alleged in the first count that certain defendants, including the Hodge Transportation System, were corporations; the names of the creditors' committee; that H. E. Hartline, F. B. Gonzales and F. C. Graves were by all defendants appointed as trustees and became vested as trustees of the claims of creditors of F. M. Hodge, Hodge Transportation System and Transport Equipment Corporation; alleged in substance in paragraph 2 that on or about the twenty-first day of July, 1925, Canavan Motors Corporation agreed to sell to the defendant Hodge Transportation System certain articles of personal property, five in number. Then follows a description of the property and it was further alleged: "and did thereupon deliver said articles of personal property to the defendant Hodge Transportation System under an agreement in writing providing among other things that title to all of said property should be retained and remain in Canavan Motors Corporation until the agreed price should be fully paid." Then follows a statement of the agreed price and then a promissory note in the words and figures following:

"Negotiable Promissory Note.

"$6,910.00                    Los Angeles, California,
                              "July 21st, 1925.

"For Value Received, we promise to pay Canavan Motors Corporation, or order, at the office of D. B. Rose, Incorporated, at Los Angeles, California, the sum of Six Thousand

Nine Hundred Ten and No/100 Dollars after date hereof in seventeen monthly installments of $300.00 each, commencing on the 21st day of August, 1925, and continuing thereafter on the 21st day of each successive month until the entire sum of Five Thousand One Hundred and No/100 ($5,100.00) Dollars has been paid; and the balance of One Thousand Eight Hundred Ten and No/100 ($1,810.00) Dollars payable January 21st, 1927. Payable in gold coin of the United States, with interest after maturity at the highest lawful rate.

"If any installment is not paid when due, the whole sum then remaining unpaid shall immediately become due and payable at the option of the holder hereof.

"In case payment hereof is not made at maturity, we agree to pay all costs of collection hereof, including a reasonable sum as attorney fees.

"HODGE TRANSPORTATION SYSTEM.

"By F. M. HODGE."

It was also alleged that said F. M. Hodge was without the specific authority of the Hodge Transportation System, a corporation, to execute the specific note and that he was actually the agent of and acting for and on behalf of all of the other defendants and that except as to F. M. Hodge, they were undisclosed principals. It was further alleged that all the defendants in this action except F. M. Hodge, are in fact the actual principals who authorized and directed and empowered F. M. Hodge to purchase said equipment. Then follows the allegations of the installments paid and the breach by failure to pay, the seizure of the property, its sale, and the amount remaining unpaid, to wit, $3,761.25.

Each count was cast in the same form and the prayer was for judgment "against the defendants" for $3,761.25, as to counts 1, 2, 3, and 4, and $4,258.50 as to the 5th count, together with interest and attorney's fees as to all the counts.

The answer of defendant Hodge denied the sale as alleged in the amended and supplemental complaint and alleged in substance that prior to the twenty-first day of July, the Hodge Transportation System, a corporation, was in financial difficulties and that at a creditors' meeting certain persons were requested to act as trustees for the benefit of all of the creditors; that defendant F. M. Hodge had originally organized and managed the Hodge Transportation System, but that

he had not been interested in said corporation in any manner or in the management thereof for several months prior to said twenty-first day of July, 1925; that he thereafter made a proposition in writing to the trustees for the creditors whereby he was to take over the business and franchise of the Hodge Transportation System, pay the creditors $100,000 out of the profits, and after that was paid all the assets of the Hodge Transportation System were to be turned over to him free and clear of all encumbrances; that the creditors' committee instructed defendant Hodge to prepare a written agreement to be submitted for approval and in the meantime instructed him to take charge and operate the business formerly conducted by the Hodge Transportation System until said written contract should be formally executed. Thereupon Hodge commenced the operation of said business for the benefit of the creditors under the direction of said creditors' committee and that at the request of and under the direction of said creditors' committee, he negotiated with Canavan Motors Corporation for the equipment described in plaintiff's complaint. That the Canavan Motors Corporation prepared the promissory note set out in the first cause of action. That F. M. Hodge communicated the contents of the promissory note and contract of purchase to the creditors' committee and was instructed by them to execute the agreement and note in the name of Hodge Transportation System by F. M. Hodge. The answer further alleged that the Canavan Motors Corporation was a creditor and that its representatives attended the creditors' meeting referred to and had actual notice of the proposed agreement submitted by the defendant Hodge to the said committee and had actual notice of the oral agreement by which Hodge was acting for the creditors' committee. That out of the earnings which resulted from the operation of the franchise of the Hodge Transportation System and for the creditors' committee and acting upon instructions from said creditors' committee defendant F. M. Hodge paid the installments on the said note and that the Canavan Motors Corporation accepted said installments, knowing that they were paid from the earnings aforesaid and under the instructions of the creditors' committee. That thereafter the creditors' committee notified Hodge that the contract submitted by him was not acceptable to the creditors and that thereupon said

Hodge notified the said Canavan Motors Corporation of this fact and that there would be no more payments made. That thereafter the Canavan Motors Corporation repossessed the said equipment. That defendant F. M. Hodge received no personal benefit and no consideration of any kind from said note except as above set out. The answer was of course the same as to each count.

The court in its findings numbers 1, 2, 3, 4, 5, 5½ and 6 found as follows:

"1. That at all times herein mentioned D. B. Rose, Inc., was, and still is, a corporation duly organized and existing under and by virtue of the laws of the state of California, with its principal place of business in the county of Los Angeles, state of California, and that at the time of the transactions set forth in the amended and supplemental complaint, the Hodge Transportation System and the Transport Equipment Corporation were corporations duly organized and existing under and by virtue of the laws of the state of California, with principal place of business in the county of Los Angeles.

"That at all times herein mentioned Canavan Motor Corporation was a corporation duly organized and existing under and by virtue of the laws of the state of California, with its principal place of business in the county of Los Angeles.

"II. . . . That prior to the 21st day of July, 1925, the creditors of the Hodge Transportation System held a meeting and requested H. E. Hartline, H. N. Blair, Ward Rubendahl, Fred C. Graves, and G. C. Dorman to act as a committee to devise ways and means, investigate and report, as to the affairs of said Hodge Transportation System; and that these defendants, save said Rubendahl, consented to act, but that their appointment was never ratified by all of the creditors; that said defendants never had, and never claimed to have, authority to purchase the equipment, or to bind the creditors for the payment of any of the obligations of the Hodge Transportation System, nor to bind the Hodge Transportation System on any obligation; that the Hodge Transportation System on the 21st day of July, 1925, and for sometime prior thereto, was the owner of a franchise to transport commodities for hire, which franchise had theretofore been granted to said corporation by the Railway Commission of

the state of California, and that this franchise was practically the only asset of said corporation; that said franchise required that said corporation be ready to accept commodities to be hauled in the territory covered by said franchise and that failure to accept commodities for transportation could be made the basis for the cancellation of said franchise.

"III. . . . That prior to the 21st day of July, 1925, defendant F. M. Hodge made an offer in writing to the defendants comprising the creditors committee and by the terms of said offer, defendant Hodge agreed to purchase all of the assets of the Hodge Transportation System; that the said creditors committee favored the proposition as contained in the offer of the defendant Hodge, and requested defendant Hodge to prepare a contract containing the provisions of his offer and to present said contract for the approval of the creditors, and that pending the execution of this contract the said defendant Hodge undertook to supply transportation for commodities as required by the franchise, without compensation for himself.

"IV. . . . That on or about the 21st day of July, 1925, at a meeting of the creditors committee, Mr. Canavan, representing the Canavan Motor Corporation, presented an offer to sell to the Hodge Transportation System the motor equipment, the balance of the purchase price of which is the subject of this action; that the said Canavan Motor Corporation, and plaintiff D. B. Rose, Inc., the successor in interest of the Canavan Motor Corporation, had actual notice of the facts as above found; that the creditors' committee declared that they would not assume any personal liability in said matter.

"V. . . . That the execution of the notes set up in plaintiff's complaint, and each of them, represents an obligation incurred for the purchase of the equipment therein referred to, but that the obligations, and each of them, were incurred without the authority, expressed or implied, of the creditors committee; that the said notes were executed 'Hodge Transportation System, by F. M. Hodge', but the court finds that at that time the said F. M. Hodge did not have authority, either express or implied, to execute said obligations on behalf of the corporation, but the said obligations were executed by F. M. Hodge without authority express or implied

either of the stockholders, directors or other officers of said corporation, but that the Hodge Transportation System received the equipment set out in said form notes, and that the Hodge Transportation System made all of the payments shown as credits on the various obligations.

"That at the time the various notes were executed the plaintiff D. B. Rose, Inc., had actual notice that defendant F. M. Hodge did not have authority, either express or implied, to execute said obligations on behalf of the Hodge Transportation System.

"That at the time of the execution of said contracts and notes said F. M. Hodge communicated by telephone with H. E. Hartline, one of the defendants, a member of the creditors' committee, in the presence of plaintiff, and thereupon turned to plaintiff and did sign the papers 'Hodge Transportation System by F. M. Hodge'. That in fact defendant Hartline did not so authorize defendant Hodge to sign or tell him to sign, but such lack of authority was unknown to the plaintiff or its predecessor in interest.

"V–½ . . . That at the time of the transactions, said Hodge Transportation System, while in form a corporation, was not engaged in corporate acts, but that all the executive officers of said corporation had resigned and ceased to function at a time prior to the 21st day of July, 1925, and that on that date said F. M. Hodge was in complete control of the place of business and operations of the Hodge Transportation System.

"VI. . . . That defendant F. M. Hodge signed the said notes only at the request of plaintiff, signing them Hodge Transportation System, by F. M. Hodge."

The rest of the findings were responsive to the remaining allegations of the pleadings as to the installments paid on the notes, the seizure, the amount the property was sold for, and the amount remaining due, fixing the attorney's fees, and need not be set forth here. The court upon the findings in the case, decided that neither the creditors' committee nor F. M. Hodge were liable to plaintiff and gave judgment against the Hodge Transportation System only.

The appellant prosecutes this appeal, bringing up the evidence in a bill of exceptions, and contends that the court erred as he says in his briefs "in directing judgment against the Hodge Transportation System and not against

either F. M. Hodge individually or the creditors' committee''. The appellant's argument is rather hard to follow, but the only defendant served with notice of appeal was respondent Hodge, and appellant's only claim on this appeal seems to be that the judgment against the Hodge Transportation System should be set aside and the judgment for the same sum entered against the respondent Hodge. This is a novel request to say the least. Appellant alleged in the amended and supplemental complaint that it entered into a contract with the Hodge Transportation System, a corporation, accepted its promissory notes, delivered equipment to the Hodge Transportation System, a corporation, by virtue of the contract and asked judgment against that corporation, and the court having given it a judgment now on appeal wants to repudiate it. The complaint was not even drawn on the theory to charge Hodge individually. Throughout the complaint he was claimed to be the agent of all the defendants and while in one place it is alleged he had no specific authority to execute the documents, in the next breath it is alleged that he was authorized to act for all of the defendants, the actual allegation being:

''III. Plaintiff is informed and believes, and on such information and belief alleges that at the time of the execution of the said promissory note above set forth, said F. M. Hodge was without the specific authority of the Hodge Transportation System, a corporation, to execute said note, but that the entire transaction hereinabove related pertaining to the purchase of said equipment, and the agreement to pay therefor, including the agreement to pay the sum of money to the amount and at the time and according to the rate set forth in said promissory note, was entered into by said F. M. Hodge as actual agent for and at the request and by the authority of and for the benefit and in behalf of the defendants, Hodge Transportation System, a corporation, . . . ''

However, in the face of this two-horned dilemma, if we understand appellant he now on this appeal seeks to hold respondent individually liable on two theories. First, that respondent is in fact the Hodge Transportation Company, citing in support thereof such cases as *Minifie* v. *Rowley,* 187 Cal. 481 [202 Pac. 673]. This claim may be dismissed without any discussion, for there is not only no evidence to support this theory, but all the evidence is to the contrary.

It is true, as claimed by appellant, that Hodge had insisted that those in active management be ousted when he took over the operation of the corporation, but they turned over their interests not to Hodge, but to the creditors' committee. The evidence shows that Hodge owned absolutely nothing belonging to the corporation and was not a stockholder, officer or director or employee of said corporation, unless perhaps he might have possibly owned one share of stock. The only specifications of insufficiency of the evidence, and the only ones we are authorized to examine (although the whole record has been examined), (*Mills* v. *Brady*, 185 Cal. 317, at 321 [196 Pac. 776]), are:

"The plaintiff specifies the following particulars in which the evidence is insufficient to justify or sustain the findings of the court, to-wit:

"(1) The evidence is insufficient to sustain the part of finding No. V reading as follows:

"'That the Hodge Transportation System received the equipment set out in said form notes, and that the Hodge Transportation System made all of the payments shown as credits on the various obligations.'

"(2) The evidence is insufficient to sustain finding No. VI, reading as follows:

"'That defendant F. M. Hodge signed the said notes only at the request of plaintiff, signing them Hodge Transportation System, by F. M. Hodge.'"

As to the first specification the appellant alleged in the amended and supplemental complaint that it delivered the equipment to the Hodge Transportation System, a corporation, and the evidence shows the payments, while made by Hodge personally, were by virtue of the authority he had from the creditors' committee, which was in charge of the Hodge Transportation System, so the evidence amply sustains this finding.

As to specification number two, Hodge signed the documents at the request of plaintiff and Canavan at least, and whether this was his only motive is wholly immaterial in this case.

The next contention of appellant is that Hodge signed the contract and notes as agent of Hodge Transportation System, a corporation, when he did not have any authority so to do. The court found that he had no authority

to affix the corporation's name to the documents. On this branch of the case appellant relies on section 2343 of the Civil Code, which provides:

"One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, and in no others:

"1. When, with his consent, credit is given to him personally in a transaction;

"2. When he enters into a written contract in the name of his principal, without believing, in good faith, that he has authority to do so; or,

"3. When his acts are wrongful in their nature."

There is no finding or evidence that Hodge was the agent of the Hodge Transportation System, a corporation. Appellant cites no authority that in anywise supports this contention. The only case worthy of notice is *Borton* v. *Barnes*, 48 Cal. App. 589 [192 Pac. 307]. This was a case where an officer of a corporation assumed to act for a corporation when he did not have authority in that particular transaction and did not believe in good faith that he did have, and the court held him personally liable. In fixing the liability in this case the court found, as set forth on page 591, as follows: "In addition to setting forth the facts, which we have only briefly summarized, it is alleged, and the lower court found, that in all matters connected with the carrying out of the said contract, the defendants assumed, stated, represented, and warranted to plaintiff that he had authority, as agent of the corporation, J. D. Barnes Co., Inc., to act for it, and by such assumption, warranty, and statements led the plaintiff to, and he did, carry out the terms of the contract. It is further alleged and found that the defendant negotiated the contract, and induced the plaintiff to enter into it, *without believing in good faith that he had authority from the corporation to do so.*" (Italics ours.)

So assuming for the purpose of argument only that he was the agent of the corporation, still he would not be personally liable under the terms of the above section. The court in the instant case did not find that Hodge did not believe he had authority to sign as he did. The court found that Hartline did not tell him to sign as he said he did, but this finding may be disregarded because there is no evidence

to support it. Hodge testified that he called up Hartline, the head of the creditors' committee, when the contracts and notes were presented by Canavan and Rose for signatures. Both Canavan and Rose testified that he had the conversation, and while they could of course not hear what Hartline said, both stated that after talking on the telephone he turned to them and said Hartline told him to sign Hodge Transportation System, by F. M. Hodge. The only person who could contradict this telephone conversation did not testify in the case. There is nothing inherently improbable in his testimony, and it is supported by all the inferences in the case and there is no justification whatever for the finding to the contrary. So if it were necessary to the decision in this case we would have to assume that Hodge did believe in good faith that he had authority to sign as he did.

■ Section 3101 of the Civil Code provides as follows: "3101. Liability of Agent. Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

However, Hodge is not personally liable under the above section of the code for two reasons. First, he was not the agent of the Hodge Transportation System. Second, he told Canavan and Rose he had no authority to execute the documents except what he received from the creditors' committee. ■ So again assuming that he was the agent and had no authority, the plaintiff would be estopped on the plainest principles of justice from holding Hodge liable personally. They both consented to the arrangement and both were fully advised as to the creditors' committee being the real power behind the Hodge Transportation System. They were satisfied to deliver the property and were fully aware or were charged with being fully aware of Hodge's position in the matter. In *Hawke* v. *California Realty etc. Co.*, 28 Cal. App. 377, at 382 [152 Pac. 959, 961], the rule is stated thus: " 'If it appears that the party has knowledge or information of such facts as are sufficient to put a prudent man upon inquiry and that he wholly neglects to make any

inquiry, or, having begun it, fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute.' (Pomeroy's Equity Jurisprudence, pp. 980, 988.)''

One who can, and does not forbid that which is done on his behalf is deemed to have bidden it. (Civ. Code, sec. 3519.) The principle is tersely stated in *Dickerson* v. *Colgrove*, 100 U. S. 578, 580 [25 L. Ed. 618, 619], by the United States Supreme Court, as follows: ''The vital principle is, that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both.''

Taking the whole record in this case it appears that Canavan and Rose were intelligent business men, apparently of large affairs. They never at any time had in contemplation holding Hodge personally responsible in this transaction. If they had they would have prepared the contract accordingly and it must be borne in mind that D. B. Rose, the executive head of plaintiff and appellant, at the request of Canavan, prepared this contract and the notes, and Rose and Canavan were together when they were presented to Hodge for execution. The idea of holding Hodge personally responsible was wholly an afterthought based on a misconception of both the facts and the law. We find no reversible error in the record.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.